[Civ. No. 10181. Second Appellate District, Division One.—June 26, 1936.]

HENRY HORN, Respondent, v. LOS ANGELES NUT HOUSE (a Copartnership) et al., Appellants.

Barry Brannen and Harry T. Young for Appellants.

Goldstone, Harris & Tracy, Jules C. Goldstone and Gilbert E. Harris for Respondent.

DESMOND, J., *pro tem.*—Appeal from a judgment awarding damages in contract to plaintiff. Plaintiff alleged in his complaint that on or about July 1, 1932, he entered into a contract with defendants whereby he was to install at their place of business a department with the necessary machinery for processing nuts and manufacturing peanut butter, and "in addition would purchase pecans in large quantities on the joint account of both plaintiff and defendants, with a view to selling the same at a profit"; further, that in so far as the purchase of pecans was concerned, he was to expend from his own funds one-half of the purchase price and one-half of the expense incidental thereto; the other half to be contributed by defendants; that he was to devote his entire

time and energy to the installation, operation, supervision and management of the nut department established by him, and also to the purchase of pecans; for all of which, it was alleged, defendants agreed to pay him at reasonable intervals "one-half of all profits earned in said department and one-half of all profits derived from the sale of pecans thus purchased". The complaint further alleged performance by plaintiff of all the work detailed above during the period July 1, 1932, to October 23, 1933; also alleged that plaintiff expended from his own funds large sums of money for the purchase of pecans and necessary expenses incidental thereto; that on the last-named date, he was wrongfully barred by defendants from operation, supervision and management of the nut department of defendants' business; that in the period mentioned the nut department and the pecan business earned a net profit of $45,000, to one-half of which plaintiff was entitled, as also to one-half of $5,000, the sum alleged to have been expended, necessarily, in the pecan purchasing business by plaintiff from his own funds, making plaintiff's total claim $25,000.

It was also alleged in paragraph VI of the first cause of action: "That by virtue of plaintiff's services thus rendered in the installation, management, supervision and operation of said defendants' business, other profits will accrue in the future, to which plaintiff will be entitled to one-half thereof."

In the second cause of action plaintiff set up a count for money had and received in the sum of $25,000. The complaint prayed for that amount in plaintiff's behalf; also, for one-half of such other sums as might be earned as profit in the nut department.

On the opening day of the trial, plaintiff's counsel, by leave of court, filed an amendment to his complaint in the form of a third and additional cause of action alleging that the agreement which plaintiff and defendants made with regard to the pecans included buying and selling and was a partnership agreement; that the net profits of that business for the period above mentioned amounted to $5,000; that the plaintiff advanced for expenses in connection with purchases from his own funds the full amount of $5,000; that, by reason of such profits and expenses, he was entitled to $5,000, one-half the total of $10,000. By this amendment, plaintiff added

prayers to his complaint asking for a dissolution of the partnership and an accounting.

Before the case went to trial, the defendants objected to the impanelment of a jury, on the ground that the action was equitable in character. The objection was overruled and the jury sworn to determine specifically three questions: First, whether there was, in fact, a contract of partnership as pleaded; second, whether that contract was entire or divisible; third, whether it was in fact terminated in October, 1933. The court at that time reserved the right,—accepting or rejecting such advice, as might be given by the jury on the issues mentioned,—to determine the amount and distribution of profits, if any, "under such contract as the jury may find existed". Several days later, and four days before he rested his case, if we may accept the statement in his brief, respondent dismissed the recently added third cause of action, and the court then notified the jury that this left "the action one at law pure and simple". Respondent also claims that on January 15, 1934, before he rested, he struck from his complaint paragraph VI of the first cause thereof, demanding profits accruing from the nut department after the filing of the action. Appellants, on the other hand, stated in their opening brief that this withdrawal of claim for such profits took place "shortly before the conclusion of the trial", which it appears ended on January 24, 1934, nine days later than the date mentioned by respondent. Respondent's contradiction of this last statement is not refuted by appellants' counsel in his answering brief, nor are other contradictions. In addition, respondent's counsel charges his opponent with "dexterously omitting" certain words or passages from his references to exhibits introduced or proceedings had in the lower court, and directs our attention to various points in the record where a complete quotation gives us a somewhat different view than does the portion quoted by appellants. Under these circumstances, it has been necessary for us to resort constantly to the record to ascertain what actually transpired.

The appeal rests upon claimed errors of law occurring during the trial in regard to the admissibility of evidence; in regard to instructions given and refused; in permitting the case to be tried and finally decided by a jury. It is also claimed that certain special findings and the verdict by the jury are unsupported by the evidence; further, that appel-

lants were prevented from having a fair and impartial trial by reason of misconduct on the part of respondent's counsel in presenting his case and examining witnesses. Finally, it is claimed that the verdict is the result of prejudice and bias on the part of the jury evidenced by the excessive amount of damages awarded.

While the appeal is from the judgment solely, we note that a motion was made for a new trial and one of the grounds relied upon was ''excessive damages . . . appearing to have been given under the influence of passion and prejudice''. At the hearing upon that motion, the trial judge suggested, as a condition of not granting it, acceptance by respondent of a reduction from the amount of $16,964.02, awarded by the jury, to the sum of $6,723.28. Upon this subject and having read that portion of the transcript where the court explains his method of calculation, we believe respondent in his brief puts the matter in its true light when he says that the learned trial judge ''in extreme fairness and caution based the damages upon appellants' own testimony with respect to net profits''. In this situation it is difficult to see how appellants were injured in any way by testimony offered by respondent on the question of profits, for it is apparent that on the motion for a new trial that evidence was disregarded by the court in its determination to cure any possible error or injury that might result to appellants. We are satisfied that by the court's handling of the matter no injury did result; therefore, no valid complaint arises on the question of proof of profits.

We cannot sustain the claim that the case should not have been tried by a jury. (Pomeroy's Equity Jurisprudence, 4th ed., sec. 178 and notes; *Balfour* v. *San Joaquin Valley Bank,* (C. C., N. D. Cal., 1906) 156 Fed. 500; *Willis* v. *Crawford,* 38 Or. 522 [63 Pac. 985, 64 Pac. 866, 53 L. R. A. 904].) As already noted, when plaintiff abandoned his third cause of action claiming a partnership, together with that paragraph in his first cause under which he asserted his right to future profits that might accrue, the court knowing that defendants denied that any partnership existed, committed the case to the jury as ''one at law pure and simple''. And simple it is, in its essence, although densely surrounded by verbiage in a lengthy trial and in lengthy briefs. It is a case of a man entering a business, working diligently in a

newly established department thereof and, in a period of little more than a year, turning in a profit of many thousands of dollars. The side line in which he engaged at the same time, namely, traveling to the eastern seaboard, to the south and middle west, and there purchasing and inspecting pecans, also netted several thousands of dollars. ■ In this pecan business, he met from his own funds the first demand for cash, namely, a bill for pecans in the sum of $7,284.33, and the freight bill amounting to $1998.95. The total amount of these two items, $9,283.28, was returned to plaintiff more than a year later, on October 23, 1933, by means of a check bearing a notation, "payment in full for all money paid by you on pecans to 1/5/33". At the same time, and in the midst of great excitement, plaintiff was handed another check in the amount of $781.56, "interest in full to date for 433 days @ 7% on 9283.28". This last check was returned by plaintiff within a few days. He then filed his suit in the form above set out. It was claimed by the defendants that the money so paid by plaintiff was a loan, and that the repayment constituted an accord and satisfaction between the parties, but the jury having all the facts before it, concluded otherwise, and having read the entire transcript, we cannot say its finding on that subject was not supported by the evidence. (*Berger* v. *Lane,* 190 Cal. 443 [213 Pac. 45] ; *Meyer* v. *Henry Cowell Lime etc. Co.,* 21 Cal. App. 602, 605 [132 Pac. 611].) The same is true as to the other findings made on special issues submitted to them, and as to the verdict.

We have considered, one by one, the multitude of objections made to the rulings of the trial court upon the admissibility of offered testimony, and find no error on any material point. Neither do we find that error arose in the matter of giving or refusing to give instructions. ■ As to misconduct charged to respondent's attorney, we feel that upon the record and the testimony introduced there is no sound basis for such a charge, and we note that the court, during the trial, was careful to instruct the jurors to disregard statements of counsel as not being evidence, on one occasion saying: "The statements of counsel are statements of his inferences, in the way of argument, and are not to be regarded by the jury unless they are supported by the evidence."

The judgment is affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 24, 1936.