**Maurice C. PARADIS, Director of the Department of Business Regulation of the State of Rhode Island**

v.

**CENTRAL CREDIT UNION et al.**

No. 95–743–Appeal.

Supreme Court of Rhode Island.

July 22, 1996.

Leonard Decof, John Foley, John S. Burns, William Dolan, III, Andrew Hodgkin, Providence, for Plaintiff.

Rosemary Healey, Shelia High King, Providence, James Carroll, Kirsten Lacovara, Boston, MA, Matthew F. Medeiros, Providence, for Defendant.

**OPINION**

PER CURIAM.

This case came before a hearing panel of this Court for oral argument on June 18, 1996, pursuant to an order directing all parties to appear and show cause why the issues raised by the defendants' appeals from an order entered in the Superior Court approving the release and settlement agreement

signed by all of the parties should not be summarily decided.

After hearing the arguments of counsel and considering the memoranda submitted by the parties, we are of the opinion that cause has not been shown. The issues raised in the appeals will be decided at this time.

As a result of the collapse of the Rhode Island Share and Deposit Indemnity Corporation (RISDIC), many Rhode Island credit unions failed and were forced to close on January 1, 1991. Central Credit Union (CCU) and Rhode Island Central Credit Union (RICCU) were two of the closed credit unions. In an attempt to recover the losses caused by the failure of CCU and RICCU, the Rhode Island Depositors Economic Protection Corporation (DEPCO) and the permanent receiver appointed for all of the failed institutions (receiver) asserted several claims against the officers, committee members, and the outside directors of RICCU and CCU. The depositors of RICCU and CCU also asserted claims against the officers, committee members, and directors in *In re RISDIC Litigation*, C.A. No. 91–1776 (master complaint). The officers and the committee members as well as the outside directors were all covered by the director and officer insurance policies issued by CUMIS Insurance Society, Inc. (CUMIS).

On May 27, 1993, CUMIS agreed with DEPCO and the receiver to pay $27.5 million if DEPCO and the receiver obtained release and settlement agreements from all of CUMIS's insureds. Negotiations for the release and settlement agreements began shortly thereafter, but those negotiations were complicated because of the institution of promissory note actions involving two RICCU borrowers in which the officers, committee members, and directors were named parties. *Paradis v. Zarrella*, C.A. No. 92–1422; *Harritos v. Cambio*, C.A. No. 92–1162. However, a release and settlement agreement was eventually negotiated among the parties, with the assistance of counsel, and the officers, committee members, and directors of RICCU and CCU signed and delivered that agreement to DEPCO. When the agreement was presented to the Superior Court

for approval by the trial justice assigned to hear the DEPCO matters, the officers, committee members, and directors objected. Over their objections, the trial justice approved the release and settlement agreement and entered the appropriate order. The officers, committee members, and directors appealed from that order. Vincent Zarrella and his three brothers (the Zarrellas), who filed a motion to intervene in the action below, also filed an appeal.

The Zarrellas assert that if they are found liable on the promissory notes that are the subject of the dispute in *Paradis v. Zarrella*, C.A. No. 92–1422, then they would be entitled to a reduction of that liability either equal to the amount of the contribution RICCU and CCU agreed to in the release and settlement agreement or a greater amount. *See* G.L.1956 § 10–6–7. Instead of providing for a reduction equal to or greater than that contribution, the release and settlement agreement provided for an allocation, among all of the tortfeasors responsible for RICCU's and CCU's financial problems, of the consideration paid by RICCU and CCU, an amount less than the total amount of the consideration.

█ We conclude that the Zarrellas cannot prevail on their claims. The Zarrellas are not solely responsible for the failure of RICCU and CCU. The total losses caused by the failure of RICCU were approximately $100 million, but the notes involving the Zarrellas totaled only $9 million. Thus, the Zarrellas were involved in only a fraction of the losses leading to the failure of the credit unions. Since they were not joint tortfeasors for the total amount of the losses sustained by RICCU and CCU, they are not entitled to a reduction equal to or greater than the total amount of the contribution demanded by the release and settlement agreement. The allocation provided for in the petition to approve the release and settlement agreement attempts to determine fairly and justly the amount of reduction to which each nonsettling tortfeasor is entitled, in proportion to each tortfeasor's liability for the total amount of RICCU's and CCU's losses.[1] We conclude that that procedure is proper. Thus, the

---

1. The allocation procedure contained in the petition to approve the release and settlement agree-

Zarrellas' appeal is without merit and is dismissed.

The objection to the trial justice's approval by the officers, committee members, and directors is also without merit. They assert that the release and settlement agreement contemplated a resolution of the pending and separate *Zarrella* and *Harritos* actions as conditions precedent. Thus, since both those actions are presently on appeal here in this Court and there has been no final resolution in either case, they contend that the release and settlement agreement is not a fully executed document. Moreover, since DEPCO disagrees that the resolutions of the *Zarrella* and *Harritos* cases were conditions precedent to the release and settlement agreement, the officers, directors, and committee members assert that there was no true meeting of the minds and that the release and settlement agreement is, consequently, invalid.

■ Notwithstanding the assertions of the officers, committee members, and directors, the release and settlement agreement is a fully executed and binding instrument. All parties were represented by counsel during the negotiations on the release and settlement agreement. Moreover, the officers, committee members, and directors signed the release and settlement agreement and delivered that agreement to DEPCO. Additionally, the language of that agreement is clear and unambiguous. Paragraph 17 states:

> "This Release and Settlement Agreement is contingent upon both of the following events:
> a. a final judicial determination that R.I. Gen. Laws § 42–116–40 is constitutional; and
> b. a final judicial ruling of dismissal for lack of standing of any and all claims of depositors pertaining to [RICCU and CCU], embraced in the so-called master complaint presently pending in the Rhode Island Superior Court, Providence County and styled as *In Re RISDIC Litigation*, C.A. No. 91–1776.

> Upon the failure of either of the above contingencies, this Release and Settlement Agreement shall be null and void."

The constitutionality of G.L.1956 § 42–116–40 was previously determined in *In re Advisory Opinion to the Governor (Section 42–116–40 of the DEPCO Act)*, 659 A.2d 95 (R.I.), *cert. denied*, —— U.S. ——, 116 S.Ct. 476, 133 L.Ed.2d 405 (1995), thereby satisfying the first condition. The claims of depositors of Brown University Employees Credit Union were dismissed for lack of standing in *In re RISDIC Litigation*, 662 A.2d 64 (R.I. 1995), and the remainder of the depositors' master complaints were dismissed by a Superior Court trial justice on December 7, 1995, thereby satisfying the second condition. Thus, both conditions precedent were met.

Since there was no specific mention contained in the release and settlement agreement of the *Zarrella* or the *Harritos* cases, which involved borrowers' actions and not claims of depositors as referenced in paragraph 17 of the release and settlement agreement, the *Zarrella* and the *Harritos* actions would be governed by paragraph 10 of the release and settlement agreement, which provides for indemnification for all claims other than the depositor claims dismissed in *In re RISDIC Litigation*. That is the clear and unambiguous language of the release and settlement agreement, the language to which the officers, committee members, and directors agreed, with the assistance of their counsel.

Accordingly, for all the above reasons the appeals are denied and dismissed. The order entered by the Superior Court approving the release and settlement agreement is affirmed, and the papers in this case are remanded to the Superior Court.

LEDERBERG and FLANDERS, JJ., did not participate.

---

ment provides that the amount of consideration set forth in paragraph 6 of the release and settlement agreement be multiplied by the proportion that the loan loss liability of the nonsettling tort-feasor bears to DEPCO's total losses at RICCU and CCU as of the date of the judgment against the nonsettling tortfeasor.